***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured through the N.C. Construction Industry Self-Insurers Fund, with Key Risk Management Services, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the alleged injury was on or about December 14, 1998. The nature of the injury alleged was the aggravation and exacerbation of a pre-existing condition of spinal stenosis at C3-4 and C4-5.
5. Plaintiff's average weekly wage was $590.00, which yields a weekly compensation rate of $393.35 per week.
6. The issues for determination are:
 a. Whether plaintiff sustained a compensable injury on or about December 14, 1998?
 b. If plaintiff sustained a compensable injury, to what benefits may he be entitled under the Act?
7. Plaintiff last worked for the defendant-employer on December 16, 1998.
8. The parties stipulated fifty-nine pages of medical reports into evidence. In addition, following the hearing before the Deputy Commissioner the parties submitted the March 25, 1999 medical report from Dr. Seyed Emadian into the record. Furthermore, the depositions of Dr. Stephen Bonney, Dr. John Lange, Dr. Keith Maxwell and Dr. Bob L. Webb were received into evidence.
9. Plaintiff received $5,200.00 in short-term disability payments through a policy under which the employer paid eighty percent of the premium and plaintiff paid twenty percent.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On or about December 14, 1998, plaintiff was a fifty-one year old male, who was employed as a welder and had been so employed for approximately twenty years. Plaintiff had prior workers' compensation injuries to his low back, including a fracture and disc surgery. However, plaintiff had not had prior treatment for the cervical spine.
2. In December of 1998, plaintiff was fabricating metal pieces weighing approximately sixty pounds each for a customer through a lead-burning welding process. Plaintiff performed the welding while standing at a table, which was thirty-six inches high. He lifted the lead pieces from the floor.
3. Plaintiff testified that on December 14, 1998, as he was working, a metal piece started to fall from the table. He grabbed the piece with his right hand, catching it by the handle. As he did so, plaintiff felt as if the part "snatched" him. Plaintiff testified that he began to experience a headache and pain in his chest, arms and neck.
4. Plaintiff's testimony is not credible in light of the medical history which plaintiff reported to his treating physicians at the time. Specifically, plaintiff reported shortness of breath and other respiratory symptoms, which he adamantly related to lead exposure at work. Only after all testing was reported as normal, and plaintiff was informed of the same, did he begin to claim that he was suffering from a neck condition, which he related to an alleged injury at work. Although plaintiff had prior workers' compensation injuries and was well aware of the importance of giving a complete history of the injury to his medical providers, plaintiff failed to do so in this case. Furthermore, plaintiff did not inform his employer of the alleged neck injury until sometime in April of 1999, after he had sought medical attention from a number of physicians. Plaintiff's delay in reporting his alleged injury is despite his familiarity with the need to timely report work-related injuries and further indicates that plaintiff's claim is not credible.
5. On December 14, 1998, plaintiff reported having pain in his chest and arms to Gene Davis. However, plaintiff did not specifically tell Mr. Davis that a piece had fallen and that in catching the piece, he had begun to experience pain.
6. Being concerned that plaintiff may have symptoms of lead exposure, the employer referred plaintiff to its doctor, Dr. John Lange at Western Carolina Occupational Health Center, for tests. At his initial visit on December 16, 1998, plaintiff reported a history to Dr. Lange of no episode of injury. Plaintiff also described symptoms of headaches, chest pain, painful kidneys and feeling tired for one week. Plaintiff reported that these symptoms were due to lead exposure. Thereafter, on December 22, 1998, plaintiff returned to Dr. Lange, at which time he reported headache, shortness of breath and a fiery feeling in his lungs. On December 28, 1998, plaintiff reported that he had an unbearable headache, which did not respond to treatment. Plaintiff told Dr. Lange that his problems were from use or contact with lead. Based upon plaintiff's insistence, Dr. Lange formed the opinion that plaintiff was fixated on the idea that he was suffering from lead exposure. Following testing, Dr. Lange found plaintiff was not suffering from lead exposure, and plaintiff was released from treatment as of January 11, 1999.
7. Dr. Lange found plaintiff capable of returning to unrestricted work as of December 28, 1998.
8. On January 8, 1999, plaintiff sought treatment with Dr. James Irion and Dr. Bob Webb at Mills River Family Health Center. Plaintiff reported having shortness of breath for three weeks.
9. On January 14, 1999, Dr. Webb referred plaintiff for treatment at Western Carolina Chest Associates where Dr. Robert Ward saw him. Plaintiff reported recurrent progressive respiratory symptoms, which he attributed to lead exposure at work. Plaintiff reported itching in his lungs and pain on inspiration. Dr. Ward found plaintiff likely had pleurisy and shortness of breath of unknown etiology. However, plaintiff's chest x-rays were normal. Plaintiff had a positive PPD test, indicative of newly diagnosed tuberculosis.
10. On February 1, 1999, Dr. Webb reviewed plaintiff's cervical and shoulder MRI scans. The MRI revealed spurring at C3 through C5, but there was no evidence of a herniation. Plaintiff did not report a history of a jerking incident or attempting to catch a falling metal piece at work to Dr. Webb. Instead, plaintiff reported that he often worked in a posture with his back bent and neck flexed while performing his job. Dr. Webb diagnosed plaintiff with costochondritis, an inflammation of the area between the ribs and sternum. Dr. Webb found plaintiff capable of returning to unrestricted work as of March 9, 1999.
11. On March 25, 1999, neurosurgeon Dr. Seyed Emadian of Mountain Neurological Center examined plaintiff, who reported experiencing pain while turning a fifty-pound object. Dr. Emadian found plaintiff capable of returning to unrestricted work at that time.
12. In approximately April of 1999, plaintiff told company president Jim Crafton about his pain originating from an incident when an object dropped. This was the first notice, which the employer received that plaintiff's symptoms were due to an accident at work rather than from an exposure to lead.
13. On May 27, 1999, Dr. Irion found plaintiff had chronic pain syndrome in the neck and upper back. Dr. Webb eventually referred plaintiff for pain management at Comprehensive Pain Management, where Dr. Joan Taylor, Dr. Jeffrey Coston, and Dr. Stephen Bonney saw plaintiff.
14. Plaintiff first reported a "jerking" or "snatching" incident to Dr. Coston on August 5, 1999, relating his pain to grabbing a piece of pipe. Plaintiff was given an epidural injection for the chronic cervical pain; however, plaintiff reported that he did not receive any benefit. Dr. Bonney indicated that plaintiff's cervical problems are related to degenerative disk disease and not to an alleged "jerking" incident with a pipe.
15. Despite being released to unrestricted duties, plaintiff has not sought to return to work in any capacity with defendant-employer since the alleged incident of December 14, 1998.
16. On November 12, 1999, plaintiff complained to Dr. Keith Maxwell of a neck injury, which he sustained at work after handling a heavy piece of metal, which "jerked" his neck. Plaintiff further stated that he was first tested for lead poisoning and later for the neck injury. Dr. Maxwell diagnosed plaintiff with probable spinal stenosis at C3-5 based on the MRI scan.
17. The greater weight of the medical evidence of record indicates that plaintiff's cervical spine condition was a result of degenerative processes in his neck and was not due to any alleged incident at work. Furthermore, the credible evidence of record fails to establish that plaintiff sustained an injury by accident or specific traumatic incident.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
The plaintiff did not sustain an injury by accident arising out of and in the course of the employment or as a result of a specific traumatic incident of the work assigned on December 14, 1998. N.C. GEN. STAT. § 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be DENIED.
2. Each side shall pay its own costs.
This the ___ day of December 2001.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/________________ RENE C. RIGGSBEE COMMISSIONER